Argued and submitted April 4, award of attorney fees reversed; otherwise affirmed
August 13, 2008

INTERSTATE ROOFING, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

SPRINGVILLE CORPORATION,
fka Springville Associates, Inc.,
an Oregon corporation,
*Defendant.*

INTERSTATE ROOFING, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

KVN CONSTRUCTION, INC.,
an Oregon corporation;
RCD, Inc.;
ACS Contracting, Inc.,
fka Third Day Development, Inc.,
an Oregon corporation;
Michael Angelo Construction, Inc.,
an Oregon corporation,
fka Michael Angelo Construction, Inc.;
and Prima Donna Development Corporation,
a California corporation,
*Defendants,*

*and*

RIDEOUT BROTHERS CONSTRUCTION, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

Washington County Circuit Court
C04-3118CV, C052402CV; A133785

191 P3d 743

Janet Schroer argued the cause for appellant. With her on the briefs were Marjorie A. Spiers and Hoffman, Hart & Wagner, LLP.

Charles Denkers argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff Interstate Roofing, Inc. (Interstate) appeals a judgment that awarded attorney fees to defendant Rideout Brothers Construction, LLC (Rideout). Interstate argues that the trial court had no legal basis on which to award those fees. Rideout, in response, contends that the trial court correctly awarded attorney fees under ORCP 47 G, which permits an award of attorney fees where a party has, in opposition to a summary judgment motion, offered a declaration or affidavit in "bad faith" or "solely for the purpose of delay." We conclude that the record does not support the attorney fee award and therefore reverse.

This appeal is one piece of litigation that arose out of a construction project known as Courtyards at Springville.[1] Interstate brought claims against Springville Corporation (Springville), a general contractor; Springville then filed counterclaims against Interstate. Interstate, in turn, brought a separate action against a number of subcontractors, including Rideout, seeking indemnity in the event that Interstate was found liable to Springville. The two cases were then consolidated.

In March 2006, Rideout filed a motion for summary judgment on Interstate's claims, arguing, among other contentions, that neither Interstate nor Springville had alleged or offered any evidence that Rideout was negligent as to its role in the Courtyards at Springville—namely, work related to the construction of decks on Building C of the project. In support of that motion, Rideout offered the affidavits of Baertlein, the project supervisor for Interstate, and Shiloh Rideout, one of Rideout's principals. In his affidavit, Baertlein averred that "[t]he work performed by Rideout at the 'Courtyards at Springville' was acceptable and would pass without objection in the industry." Specifically, Baertlein stated that the deck joists were constructed with the appropriate slope angles. Shiloh Rideout, in his affidavit,

---

[1] A separate appeal involving other parties to that litigation has been the subject of considerable motion practice, *see Interstate Roofing, Inc. v. Springville Corp.,* 217 Or App 412, 177 P3d 1 (2008), *modified on recons,* 220 Or App 671, 188 P3d 359 (2008), and that appeal remains pending in this court.

described the work that he performed on the decks on Building C and stated that Baertlein inspected and approved his work.

In response to the summary judgment motion, Interstate submitted affidavits from its president and one of its attorneys. Neither affidavit directly contradicted the information in the affidavits offered by Rideout. At the hearing on the summary judgment motion, the court repeatedly pressed Interstate's counsel as to what Rideout did that was negligent. Ultimately, the court took the matter under advisement and gave Interstate an additional seven days to raise any issues of fact that would preclude summary judgment—*i.e.*, Interstate was allowed to submit additional evidence in opposition to the motion.

Following the summary judgment hearing, Interstate filed "supplemental materials" in response to Rideout's motion, as well as a declaration from one of Interstate's attorneys, Garley, stating that an expert witness had been retained and would testify that, "in his opinion to a reasonable degree of engineering and scientific certainty, part of the reason for the concentration of rot at *the stair decks and landings* is because of the improper slope of [the] decks." (Emphasis added.) In response to those supplemental materials, Rideout submitted an affidavit from Shiloh Rideout stating that Rideout only performed work on the rear decks of the units on Building C, whereas the "stair decks and landings" were at the entrance of the building.

On May 15, 2006, the court reconvened the hearing on the summary judgment motion. At that point, Interstate's counsel acknowledged that Garley's declaration did not specifically address work performed by Rideout on the rear decks. Nonetheless, Interstate's counsel represented to the court that "Garley then called [the expert] to ask the expert directly for clarification on whether the findings relating to the decks applied both to the front and the rear decks. [The expert] reported to Mr. Garley, that, yes, in fact, his observations applied equally to the front and the rear decks." After hearing argument from Rideout's counsel, the trial court denied the motion for summary judgment.

On June 6, 2006—just three weeks after defeating Rideout's summary judgment motion—Interstate filed a notice of voluntary dismissal of its claims against Rideout pursuant to ORCP 54 A.[2] Rideout and other defendants objected to the voluntary dismissal, and the trial court held a hearing on the objections. The court explained that it was required to enter a judgment dismissing Rideout but expressed concern regarding the timing of the dismissal. In fact, at one point during the hearing, the court stated,

> "[I]f I had to make a decision right now I—I probably would be granting [Rideout] attorney's fees. You know, just on the basis of what's happened here and my involvement in it. But—but I'm keeping an open mind in terms of having everybody submit whatever materials they want to submit and make whatever arguments they want to make and then making a decision down the road."

The trial court entered a limited judgment that dismissed without prejudice Interstate's claims against Rideout.

Following the entry of judgment, Rideout filed its petition for an enhanced prevailing party fee and attorney fees to be paid by Interstate. In the petition, Rideout first argued that it was entitled to an enhanced prevailing party fee pursuant to ORS 20.190(3),[3] on the ground that the

---

[2] ORCP 54 A(1) provides, in part, that

"an action may be dismissed by the plaintiff without order of court (a) by filing a notice of dismissal with the court and serving such notice on the defendant not less than five days prior to the day of trial if no counterclaim has been pleaded, or (b) by filing a stipulation of dismissal signed by all adverse parties who have appeared in the action."

Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, ORCP 54 A(1), but the "judgment may include any costs and disbursements, including attorney fees, provided by rule or statute. Unless the circumstances indicate otherwise, the dismissed party shall be considered the prevailing party." ORCP 54 A(3).

[3] ORS 20.190(3) provides that, in certain situations, the court may award to the prevailing party up to an additional $5,000 as a prevailing party fee. In making such an award, the court is required to consider factors such as "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal"; "[t]he objective reasonableness of the claims and defenses asserted by the parties"; "[t]he extent to which an award of a larger prevailing party fee in the case would deter others from asserting meritless claims and defenses"; and "[t]he objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings." ORS 20.190(3).

claims against Rideout were objectively unreasonable because "[t]his was a $3,000 contract for [Rideout], and they had no business being included in this multimillion dollar lawsuit." The petition also asserted two bases for an award of attorney fees. First, Rideout argued that it was entitled to attorney fees under ORCP 47 G, which provides:

> "Should it appear to the satisfaction of the court at any time *that any of the affidavits or declarations presented pursuant to this rule are presented in bad faith or solely for the purpose of delay*, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits or declarations caused the other party to incur, including reasonable attorney fees, and any offending party or attorney may be subject to sanctions for contempt."

(Emphasis added.) Second, Rideout argued that it was entitled to attorney fees pursuant to ORS 20.105, which authorizes an award of attorney fees against a party that has "willfully disobeyed a court order" or asserted a claim without an "objectively reasonable basis."

At the hearing on the attorney fee petition, the trial court focused its attention on why Rideout had not been dismissed sooner, particularly before the prolonged summary judgment proceedings. In response to a question from the court in that regard, Interstate's counsel explained:

> "[I]t's a strategy issue, Your Honor. It was a five-week trial with one party [Springville]. We're at this point facing their attorney fee hearing in October and a second trial against that party. These are claims for indemnity and contribution.
>
> "We—the law allows the choice of bringing the suit up front or a pay and chase. And we were attempting in the best-faith efforts to get all the parties at the table to—to reach a settlement because in the—in the construction world you want everybody there. It—it did not work out, so the second trial is pending there."

The trial court then inquired, "Well, why didn't you let them out at the Motion for Summary Judgment?" Interstate's counsel responded,

"Well, that's a different issue because that's a factual issue. By this dismissal in no way—it was a voluntary notice of dismissal. We still have one bite at the apple remaining. It was not any admission that his part—his client is not responsible.

"Also, in the dateline * * *, the Summary Judgment Motion was filed prior to the settlement conference, which was held in early March, again trying to get everybody at the table. This—this case, with the way we've been having dealt with the other party—obviously we're plaintiff in both cases, but the actual owner of the building it's—it's taken many—many twists and turns, and one of those was a trial strategy that we needed to go forward and figure this out with one party [Springville] and try to get the best result we could."

In rebuttal, Rideout's counsel asserted that "the affidavits that were presented all the way through the summary judgment material, as you recognize, were extremely thin because [Interstate] didn't have any investigation at all." According to Rideout, it had given Interstate more than an adequate opportunity to dismiss the claims before summary judgment and, by the time that Interstate opposed summary judgment, Interstate's "strategy was set and if they were going to dismiss everybody after, you know, a passage of another week they should have said so at that time and they did not. That's bad faith."

The trial court, without elaboration, then stated, "Okay. I'm not awarding an enhanced prevailing party fee[;] I'm awarding every penny that you've asked for in attorney's fees." Accordingly, the trial court entered judgment in favor of Rideout for "all attorney fees expended in this matter"—$12,150.

Interstate appeals that judgment, arguing that the trial court lacked any basis for awarding attorney fees under either ORCP 47 G or ORS 20.105. Initially, we note that neither the trial court's oral ruling nor the judgment for attorney fees identifies the legal basis for the award. As discussed above, Rideout's fee petition asserted a right to attorney fees under both ORCP 47 G and ORS 20.105. On appeal, Rideout defends the trial court's award of fees solely on the basis of ORCP 47 G and concedes that there is no basis in the record

for an award of attorney fees under ORS 20.105. We agree and accept that concession.

Instead, Rideout asks that we assume that the trial court found that an award of attorney fees was authorized under ORCP 47 G. There are at least two reasons for questioning the validity of such an assumption. First, the trial court did not identify or discuss any affidavit or declaration that it believed was submitted in "bad faith" or "solely for the purpose of delay"—the only bases for an award under ORCP 47 G. Second, and more telling, the trial court awarded attorney fees for "every penny that [Rideout] asked for" in the fee petition. The fee petition included work performed from the outset of the litigation—as early as July 2005—through the attorney fees hearing. ORCP 47 G, however, only authorizes an award of attorney fees for "the reasonable expenses which the filing of the affidavits or declarations caused the other party to incur[.]" Neither the trial court nor Rideout has explained—and we do not understand—how the filing of a declaration or affidavit in response to a March 2006 summary judgment motion could have caused Rideout to incur attorney fees that *predated* the summary judgment proceedings.

Nonetheless, even assuming that the trial court based its award of attorney fees on ORCP 47 G, we agree with Interstate that the record does not support such an award. Rideout's primary argument in defense of the attorney fees award is that Interstate "utilized the subcontractors case [against Rideout] as a vehicle to stretch the trial date out for another year, and that it had always been the plan of [Interstate] to dismiss the subcontractors when the main case came to trial." Rideout, however, candidly concedes that "[t]hese considerations are not within the record and not before this court[.]" Nonetheless, Rideout contends that "they run as a theme through this file."

Based on the record that is before this court, we are not persuaded that there is any evidence from which the trial court could have found that a particular affidavit or declaration was submitted in "bad faith" or "solely for the purpose of delay." In fact, even on appeal, Rideout fails to identify the

particular declaration or affidavit that it contends was submitted in bad faith or solely for the purpose of delay. Rather, Rideout relies on speculation concerning the motives of Interstate's counsel and asks this court to assume—based solely on the timing of the dismissal and the "handling of the summary judgment motion"—that one or more unspecified affidavits or declarations were submitted in bad faith or solely for delay; such speculation is not a permissible basis for an award of fees under ORCP 47 G.

For all of the reasons stated above, we conclude that the trial court erred in awarding attorney fees to Rideout, and we therefore reverse the award of attorney fees.

Award of attorney fees reversed; otherwise affirmed.